**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MATICIA SMITH,**

        **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

        **Respondents.**

**Criminal Case No. 2:02-cr-35(2)**
**Civil Case No. 2:06-cv-0017**

**JUDGE GRAHAM**
**MAGISTRATE JUDGE ABEL**

**REPORT AND RECOMMENDATION**

Petitioner Maticia Smith, a federal prisoner, brings the instant motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. §2255.

This action involves petitioner's conviction after a jury trial with co-defendant Darrin Walker on maintaining a crack house, in violation of 21 U.S.C. §846(a)(2).  On June 15, 2004, Petitioner's conviction and sentence were affirmed by the United States Court of Appeals for the Sixth Circuit. Petitioner never sought a petition for a writ of *certiorari* with the United States Supreme Court.  On January 11, 2006, she filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  She alleges that she was denied the effective assistance of appellate counsel because her attorney failed to make oral arguments, and failed to pursue a claim under *Blakely v. Washington*, 542 U.S. 296 (2004) or *United States v. Booker*, 543 U.S. 220 (2005); she also asserts that her sentence violates *Blakely* and *Booker*.

This matter is before the Court on the instant motion, respondent's return of writ, petitioner's response, petitioner's affidavit and supplementary response, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claim that she was denied the effective assistance of appellate counsel due to her attorney's failure to make oral

arguments (claim two) be **DISMISSED** as plainly without merit.  The Magistrate Judge further **RECOMMENDS** that petitioner be appointed counsel for an evidentiary hearing to determine whether equitable tolling is appropriate and whether appellate counsel acted unreasonably in failing to pursue petitioner's *Blakely* claim in further appellate proceedings.

Respondent is **DIRECTED** to provide supplemental briefing within thirty (30) days of the date of this order regarding petitioner's allegation that her sentence violates *Blakely*.

## I. PROCEDURAL HISTORY

On March 14, 2002, petitioner was indicted maintaining a place for the purpose of storing, distributing and using crack cocaine, in violation of 21 U.S.C. §856(a)(2).  Doc. No. 1.  While represented by counsel, petitioner proceeded to jury trial.  On September 26, 2002, petitioner was found guilty, as charged.  Doc. No. 39.  On January 24, 2003, petitioner was sentenced to 87 months incarceration plus three years supervised release.  Doc. No. 47.  Petitioner filed a timely appeal to the United States Court of Appeals for the Sixth Circuit, which affirmed petitioner's conviction and sentence as follows:

> In her timely appeal, Smith argues that the district court improperly sentenced her because it concluded that she had participated in the underlying drug offense.  She also argues that the district court improperly shifted the burden to her to show that she was not involved in the underlying drug offense.
>
> Upon review, we conclude that the district court properly concluded that Smith had participated in the underlying drug offense. This court reviews for clear error the district court's factual findings underlying the sentence, *United States v. Clements,* 144 F.3d 981, 982 (6th Cir.1998), and gives due deference to the district court's application of the sentencing guidelines to the facts of the case. *United States v. Kushmaul,* 147 F.3d 498, 500 (6th Cir.1998). This court, however, reviews *de novo* the sentencing court's application of the guidelines when the application presents a purely legal question. *United States v. Moerman,* 233 F.3d 379, 380 (6th Cir.2000).

The district court properly determined Smith's sentence. Section 2D1.8(a)(2) of the United States Sentencing Guidelines requires the district court to determine whether a defendant who managed an establishment used to manufacture drugs actually participated in the underlying drug offense. Subsection (a)(1) provides that the base offense level is the offense level from § 2D1.1 applicable to the underlying offense unless subsection (a)(2) applies. Section 2D1.1 is inapplicable if the defendant, among other things, allowed use of multiple premises, guarded the drugs, or took any part in the underlying drug offense. USSG § 2D1.8, comment (n.1).

In this case, the government presented evidence establishing that Smith did more than merely permit her residence to be used by her boyfriend (Darrin Walker) for drug trafficking offenses. The government presented the testimony of several agents from the Drug Enforcement Agency (DEA) clearly indicating that Smith was aware of Walker's drug activities. The evidence reflected that Smith's master bathroom, that she shared with Walker, had been converted into a crack laboratory, including all the paraphernalia necessary to convert powder cocaine into crack cocaine. In addition, the police discovered three loaded weapons under the mattress in the master bedroom and $31,000 in cash. They also discovered approximately half a kilogram of cocaine under the step stool used by Smith to climb into the bed, and an additional 211 grams of cocaine in another location of the bedroom. Second, the record reflects that Smith engaged in various types of conduct designed to facilitate Walker's activities. Agent Flynn discovered that, on February 9, 2002, Smith had purchased or leased a 2002 Corvette, that on February 5, 2002, Smith had purchased a 2002 Cadillac Escalade, and that on February 4, 2000, Smith had purchased a 1996 Chevrolet Impala. Smith provided Walker with the Impala, and Walker used it to transport drugs, weapons, and paraphernalia used in the sale of the drugs. The agents discovered that the passenger side air-bag had been removed, and that the compartment had been used to conceal drugs. Smith also provided Walker with the Escalade that he drove to meet a confidential informant who had agreed to cooperate with the government by delivering a package of false cocaine to Walker. The informant had made a number of recorded telephone calls to the telephone number provided to Smith's business (Pamper Your Hand and Nails) to arrange the controlled delivery of the package. Finally, the DEA's investigation revealed that Smith had deposited more than $30,000 in cash into her checking account during a six-week period between

December and January 2002. While Smith maintained that her business generated income of $100,000 per year, this amount would only account for approximately $8,300 per month. These deposits strongly indicate that Smith received the proceeds of Walker's drug activities and deposited the proceeds into her own bank account; thereby, participating in the concealing and redistribution of the drug proceeds. For these reasons, the district court properly concluded that Smith did more than merely permit her residence to be used by Walker for drug trafficking offenses.

Finally, the district court did not actually place the burden on Smith to disprove her participation in the underlying drug offense, even though it made reference to *United States v. Dickerson,* 195 F.3d 1183 (10th Cir.1999), in which the Tenth Circuit placed the burden on the defendant to prove non-participation. The court clearly relied on the evidence presented by the government to support its conclusion that Smith had taken numerous actions to facilitate Walker's drug activity. The court clearly indicated that it was relying on evidence that the United States Attorney had "pointed out."

*United States v. Smith*, 2004 WL1367293 (6th Cir. June 15, 2004).  On June 15, 2004, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's conviction and sentence.  *Id*.  On July 7, 2004, the mandate issued.  Doc. No. 64.  Petitioner apparently never filed a petition for a writ of *certiorari* to the United States Supreme Court.

On January 11, 2006, petitioner filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  She asserts as follows:

1. The Court improperly imposed a sentence 60 months longer than that authorized by the jury's verdict.

2. Ineffective assistance of appellate counsel due to counsel's failure to meet the deadline for oral argument.

3. Ineffective assistance of appellate counsel due to counsel's failure to preserve an issue regarding a violation of *United States v. Booker*, 543 U.S. 220 (2005).

4

On January 18, 2006, the Magistrate Judge issued a *Report and Recommendation* pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings recommending that petitioner's §2255 petition be dismissed as untimely.  Doc. No. 94.  On February 13, 2006, petitioner's objections to the *Report and Recommendation* were sustained due to her allegation that she was misled by appellate counsel; respondent was directed to file the return of writ.  Doc. No. 98.  On April 10, 2006, respondent filed the Return of Writ.  Doc. No. 104.

## II.  STATUTE OF LIMITATIONS; INEFFECTIVE ASSISTANCE OF COUNSEL

As previously discussed, petitioner's conviction became final on September 13, 2004, ninety days after the United States Court of Appeals for the Sixth Circuit's June 15, 2004, dismissal of her appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court.  The statute of limitations expired one year later, on September 13, 2005.  Petitioner did not file the instant §2255 petition until January 11, 2006; she waited until January 5, 2006, to sign the petition.

Again, however, petitioner asserts that equitable tolling of the statute of limitations is appropriate because her attorney mislead her into believing that he would file a timely federal habeas corpus petition on her behalf.  Petitioner states:

> Ms. Smith was deceived by Mr. McNeal into believing that he had filed a §2255 motion on Ms. Smith['s] behalf.  Specifically, Mr. McNeal told Ms. Smith time and again that he had petition[ed] the court.  Ms. Smith sought more information, but Mr. McNeal either ignored her or perpetuated further lies to Ms. Smith.
>
> ***
>
> Mr. McNeal assured Ms. Smith and Ms. Morgan that he was taking

5

> care of everything.  Mr. McNeal falsely assured them that he was
> preparing a habeas corpus [petition] but he made no such preparation.
> Mr. McNeal consistently misled Ms. Smith.  Mr. McNeal told Ms.
> Smith he would file a 2255 [petition] before September 2005.... After
> months of inactivity, Ms. Smith wrote the court seeking
> reconsideration of resentencing her, which the court denied, but
> informed her that appropriate procedure is a §2255 motion....

*Objections*, at 1.  According to petitioner, she only learned that her attorney had not filed a §2255

petition on November 2, 2005, when the Court denied her motion to reduce sentence  and advised her

that her arguments were more suitable to a petition under 28 U.S.C. §2255.  *See* Doc. No. 88.  She

filed the instant §2255 petition shortly thereafter, on January 11, 2006.

        In support of her allegation that she was mislead by appellate counsel to believe that he had

filed a timely habeas corpus petition on her behalf or was pursuing other appellate remedies, and that

equitable tolling of the statute of limitations therefore is appropriate, petitioner has attached letters that

she purportedly wrote  inquiring regarding the status of her case.  The first is dated July 28, 2004.  In

it, petitioner writes:

> Mr. McNeal, did you put in for a rehearing *en banc* or a 2255 for my
> case?  The jury.... did not find me guilty of the drugs or guns at trial....
> The probation officer add[ed] the drugs and guns to me.  Do you think
> *Blakely* or *Booker*... would help my case? ... How are you gone [sic] to
> fight my case since the appeal court denied my appeal?

*Exhibit 10 to Petition*.  Petitioner also has attached a letter from William Fleck, her trial attorney, that

was apparently written in response to her inquiry.  The letter is dated October 28, 2004, and in it,

Fleck advises petitioner that McNeal may be addressing her sentencing issues on appeal "which I

understand is taking too long which is not his fault."  *Exhibit 15 to Petition*.  Fleck states:

> If you believe [*Blakely*] is applicable to you, you would file a Motion
> before the Court to vacate the sentence based upon these decisions.

6

> But as I said, Mr. McNeal may be quoting those cases on your appeal.

*Id.* Petitioner has attached a letter she wrote to McNeal dated December 6, 2004, which indicates:

> ... Since the last time I spoke with you on telephone on July 29, 2004, I have written you five (5) letters concerning my case which you never respond back. In one of my letter[s] I ask[ed] you to call my Unit Manager to set up a conference call with me which I still waiting [sic] on your call. I have tr[ied] calling you on several occasion[s] at the office and on your cellular telephone but there was no answer. Last month, my auntie Earnestine Morgan said she spoke with you in regards to my case and she stated you were going to send her some information concerning my case which she [has] yet to receive.

> ... I need to know what paperwork you have put into the court in my favor because I don't understand what you are doing for me. Since my appeal was denied what are you doing in my favor now? Did you put back into the Appeal Court an *en banc* rehearing ...? What is going on with Supreme Court in regards to Booker and Fanny? ...

Exhibit 11 to Petition. She has attached a letter she wrote McNeal dated March 2, 2005, which indicates:

> ... I wrote the Court to see the status of my case... they responded by saying that my appeal was affirm[ed] on June 15, 2004, and there [is] nothing pending. I don't understand why you did not file for a rehearing of my case following the Blakely case which was won a week after my appeal was denied. My case is a Blakely issue.... That is why I ask[ed] you to ask for a rehearing.... What is your strategy now? I have been writing you since July 2004 to February 2005 concerning my case which you have not yet to respond. I have call[ed] your office and left message [sic] on your voice mail and I have tr[ied] calling your cellular .... My family... ha[s] been trying to call you at the office... you never responded to their call [sic].

Exhibit 12 to Petition. She has attached a letter she wrote McNeal dated August 4, 2005, which indicates:

7

I have not heard from you in the last two months.  I'm writing you for you to updated [sic] me on my case.  Have you heard an answer from the appeal court yet?  Have you started on my 2255 yet?  I have been doing some research in the law library for the last few months.  I read that you had 45 days to appeal my case to the Supreme Court after the Appeal [sic] affirmed my conviction.... I asked for you to filed [sic] for a rehearing or file something on the ground of Blakely... a week after my case.  If I would have a motion into the court pending in the wake of the Supreme Court['s] decision I would be home by now.  My case is a *Blakely* and *Booker* issue.  I have read so many case[s] that was rehear [sic] because they filed motion [sic] pending the Supreme Court's decision.  Now I have to wait until Congress... make[s] *Booker* retroactive on collateral review (2255).  I still don't understand why you did not file some [sic] on my behalf after *Blakely* and *Booker* was won....  If you would have filed[d] a motion in the Supreme Court in July 2004 challenging the Appeal [sic] affirming the District Court decision there is [a] strong possibility my case would have been vacate[d]....  The question for you now is where do we go from here? ... I'm starting to feel like a foul [sic] because I could have file[d] a motion myself.  I understand you are busy but can you take a few minutes out to respond by to [sic] this letter and they [sic] me what I need to do to get back into court.

*Objections, Exhibit 14.*  Petitioner has also attached a copy of a letter dated January 3, 2006, that she purportedly received from defense counsel Fleck in response to her inquiry.  In it, Fleck states that he cannot file a motion for post conviction relief on her behalf as he is no longer her attorney.

*Objections, Exhibit 16.*  Finally, petitioner refers to a May 12, 2005, "renewed motion for release from detention pending appeal," Doc. No. 66, filed by McNeal requesting petitioner's release from detention "pending further appeal to the United States Court of Appeals for the Sixth Circuit."  In the motion, counsel states:

The posture of this case allows Meticia Smith[1] to be released pending the appeal of her conviction.

---

[1]  McNeal states that petitioner's name is Meticia, rather than Maticia Smith; however, petitioner signed and filed the instant §2255 petition as Maticia Smith.

8

*See id.*  The motion for release from custody was denied.  Doc. No. 67.

In response to petitioner's allegation that she was mislead by her appellate attorney to believe that further appellate proceedings or a §2255 petition was being pursued, respondent has submitted an affidavit from McNeal which indicates in relevant part as follows:

> 1.  I was retained by Meticia Smith to handle the appeal of her conviction in Case No. CR-2-02-35-2 to the Sixth Circuit Court of Appeals.
>
> 2.  The decision of the District Court was affirmed on June 16, 2004.
>
> 3.  After that date, Ms. Smith and I had several conversations regarding the impact of the Supreme Court decisions in *Blakely* and *Booker* on her appeal.
>
> 4.  I attempted additional action on her appeal in May 2005, but Ms. Smith was aware that I was not involved in any matters other than her appeal to the Sixth Circuit.
>
> 5.  Ms. Smith has filed motions on her own, including a Motion to Reduce Sentence, without any input or assistance from me.

*Affidavit of E. Darren McNeal*.  Respondent states:

> Appellate counsel informed the undersigned that he was retained only for purposes of completing Smith's direct appeal to the Sixth Circuit and that his fee agreement did not obligate him to seek panel review, rehearing en banc, to file a petition for certiorari in the Supreme Court, or to file a petition pursuant to 28 U.S.C. §2255.

*Return of Writ*, at 10.  Respondent has also attached a copy of McNeal's fee agreement with petitioner, which indicates, *inter alia*, that

> [r]e-trial or other actions after appeal were not discussed by us and are

9

> not covered by this agreement.  It is my usual practice, should actions
> after appeal become necessary, to amend this agreement and increase
> the fee.

*Attachment to Return of Writ*.  Petitioner signed the fee agreement indicating that she understood its

terms on February 26, 2003.

As previously discussed, *see Opinion and Order, February 13, 2006*, some federal Courts of

Appeals have held that equitable tolling of the statute of limitations may be appropriate based upon

gross attorney malfeasance, so long as the petitioner was diligent in pursuing her claims.  *See United

States v. Martin,* 408 F.3d 1089, 1095-96 (8th Cir. 2005)(defendant's reasonable reliance on attorney

misrepresentations and "egregious attorney misconduct" warranted equitable tolling of the statute of

limitations):

> Ineffective assistance of counsel, where it is due to an attorney's
> negligence or mistake, has not generally been considered an
> extraordinary circumstance in this regard. *Beery v. Ault*, 312 F.3d 948,
> 951 (8th Cir.2002); *see also Rouse v. Lee*, 339 F.3d 238, 248-49 (noting
> that a majority of the circuits have held that basic attorney errors such
> as miscalculation of a filing deadline are generally insufficient to
> support equitable tolling). We have acknowledged, though, that serious
> attorney misconduct, as opposed to mere negligence, "may warrant
> equitable tolling." *Beery*, 312 F.3d at 952. Other circuits have also held
> that an attorney's misdeeds may equitably toll the statute of limitations.
> *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir.2003) (tolling state habeas
> petitioner's statute of limitations due to the "extraordinary
> circumstance" of egregious misconduct on the part of petitioner's
> attorney); *Baldayaque v. United States,* 338 F.3d 145, 152 (2d
> Cir.2003) ("It is not inconsistent to say that attorney error normally will
> not constitute the extraordinary circumstances required to toll the
> AEDPA limitations period while acknowledging that at some point, an
> attorney's behavior may be so outrageous or so incompetent as to
> render it extraordinary."); *United States v. Wynn,* 292 F.3d 226, 230
> (5th Cir.2002) (holding that petitioner's "allegation that he was
> deceived by his attorney into believing that a timely § 2255 motion had
> been filed on his behalf presents a 'rare and extraordinary circumstance'
> beyond petitioner's control that could warrant equitable tolling of the

statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir.2001) (noting that claims of attorney misconduct may provide a basis for equitable tolling), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *cf. Rouse*, 339 F.3d at 250 n. 14 (suggesting that equitable tolling may be appropriate where attorney conduct reaches the level of "utter abandonment"); *but see Modrowski v. Mote*, 322 F.3d 965, 968-69 (7th Cir.2003) (rejecting attorney misconduct as a basis for equitable

tolling because such conduct is "attributable to the client").

*Baldayaque* and *Spitsyn* are particularly instructive. In *Baldayaque,* a federal prisoner sought § 2255 relief, and his wife specifically asked her husband's attorney to file a "2255." Thereafter, the attorney engaged in repeated misconduct. First, he told Baldayaque's wife that it was too late to file a § 2255 motion, when in truth there was over a year remaining on his statute of limitations. Then, when pressed by Baldayaque's wife about the status of his case, the attorney "assured her that he was 'just waiting for a court date,' " although he had apparently not filed anything at that time. Later, the attorney filed a motion to modify Baldayaque's sentence, but it was denied. Baldayaque was not notified about the motion or its denial; instead, the attorney informed his wife that there was nothing more they could do. Baldayaque later filed his own § 2255 motion, which the district court denied as untimely. The Second Circuit reversed, finding that Baldayaque's attorney's conduct-not filing a § 2255 motion despite a

directive to do so, giving erroneous legal advice without performing even cursory research, and failing to communicate with his client-was "far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary' " and a may provide a basis for tolling of the statute of limitations. *Baldayaque,* 338 F.3d at 152-53.

In *Spitsyn*, a state prisoner's mother hired a lawyer almost a full year before his habeas filing deadline. After months of inactivity, Spitsyn and his mother wrote to the attorney, but received no response. As the filing deadline approached, Spitsyn and his mother contacted the state bar association seeking assistance. Spitsyn also sent his attorney another letter asking for his file. The attorney did not respond to any of these letters before the filing deadline passed. Finally, after the deadline, the attorney sent a letter "expressing regret for not following through with the case and returning the Spitsyns' payment." Months

11

> later, the attorney returned Spitsyn's file. Spitsyn then filed a pro se habeas petition, which the district court dismissed as untimely. On appeal, the Ninth Circuit reversed, finding that "the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA." *Spitsyn,* 345 F.3d at 801.

*Id.,* at 1092-95.  However, the Magistrate Judge is unable to determine from the record before this Court whether petitioner reasonably relied on her attorney's alleged misrepresentations that he was pursuing further appellate proceedings or a §2255 petition on her behalf so that equitable tolling of the statute of limitations is appropriate.

Moreover, petitioner asserts that she was denied the effective assistance of appellate counsel because her attorney failed to raise on appeal an issue regarding *Blakely* or *Booker.*  Respondent correctly notes that appellate counsel cannot be deemed constitutionally ineffective for failing to raise a *Blakely* or *Booker* claim on appeal, since both such decisions, issued on June 24, 2004, and January 12, 2005, respectively, were decided after the United States Court of Appeals for the Sixth Circuit affirmed petitioner's sentence, on June 16, 2004.  *See United States v. Burgess,* 142 Fed.Appx. 232, unpublished 2005 Fed.App. 0531N (6 Cir. June 22, 2005)(no ineffective assistance for failing to anticipate *Blakely* or *Booker* ).

> Competence, not prescience , is what the constitution requires. *See United States v. Bradley,* 400 F.3d 459, 463 (6th Cir.2005)("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance."); *Green v. United States,* 65 F.3d 546, 551 (6th Cir.1995) (lawyer's failure to predict Sixth Circuit's approach to law did not constitute ineffective assistance of counsel); *United States v. Gonzalez-Lerma,* 71 F.3d 1537, 1542 (10th Cir.1995)( "Defendant faults his former counsel not for failing to find existing law, but for failing to predict future law. We agree ··· that clairvoyance is not a

12

> required attribute of effective representation."); *Nelson v. Estelle,* 642
> F.2d 903, 908 (5th Cir.1981) (holding that "counsel is normally not
> expected to foresee future new developments in the law").

*Conley v. United States,* 2005 WL 1420843 (W.D.Mich. June 15, 2005). That said, *Blakely* is applicable to petitioner's sentence, since *Blakely* was decided shortly after petitioner's appeal was denied and before her conviction became final. *See Edgecomb v. United States*, 2006 WL 151895 (W.D. Michigan January 19, 2006), citing *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6 (1987), *Clay v. United States*, 537 U.S. 522, 524-25 (2005); *Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir.2004).

Still, respondent has not addressed the merits of petitioner's claim that her sentence violated *Blakely*. Respondent contends that petitioner's *Blakely* claim may not be considered in these habeas corpus proceedings because the United States Court of Appeals for the Sixth Circuit affirmed petitioner's sentence on direct appeal. *See Return of Writ*, at 12-13; *United States v. Frady,* 456 U.S. 152, 164-65 (1982). The Magistrate Judge is not persuaded by respondent's argument.

> Even if a legal issue is determined against a defendant on direct appeal,
> the defendant may nonetheless "secur[e] relief under § 2255 on the
> basis of an intervening change in law." *Davis v. United States*, 417 U.S.
> 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

*Logan v. United States*, 208 F.3d 541, 543 (6th Cir. 2000). In view of the United States Supreme Court's decision in *Blakely*, such are the circumstances here.

Additionally, and assuming that this action may be timely, in view of the conflicting allegations regarding the representations of appellate counsel, the Magistrate Judge is unable to determine whether counsel acted unreasonably in failing to pursue petitioner's *Blakely* claim in further appellate proceedings.

13

No evidentiary hearing is required where "'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,'" *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003), quoting *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (citation omitted), and citing *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir.1996). However, "'[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.,'" *Id*., quoting *Turner v. United States,* 183 F.3d 474, 477 (6th Cir.1999) (internal citation omitted). "[A] Section 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Id.*, citing *Turner v. United States, supra.*

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner be appointed counsel for the purpose of an evidentiary hearing to determine whether this equitable tolling is appropriate and whether appellate counsel acted unreasonably in failing to pursue petitioner's *Blakely* claim in further appellate proceedings. Respondent is **DIRECTED** to provide supplemental briefing regarding petitioner's claim that her sentence violates *Blakely*.

### III. CLAIM TWO

In claim two, petitioner asserts that she was denied the effective assistance of appellate counsel because her attorney failed "to meet a timely deadline for oral argument." Even assuming that this action is timely, claim two is plainly without merit.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show

14

> that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Defendants appealing their criminal convictions enjoy the same Sixth Amendment right to the effective assistance of counsel on a direct appeal as of right that they have during trial. While appellate counsel is not expected to raise every nonfrivolous issue on direct appeal, counsel is obligated to provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). As with an ineffective assistance of trial counsel claim, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 696; *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

Petitioner cannot meet this test here.  As noted by respondent, petitioner cannot establish any prejudice under *Strickland* due to her attorney's failure to make oral arguments in the Sixth Circuit Court of Appeals.  Claim two is without merit.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner be appointed counsel for the purpose of an evidentiary hearing to determine whether this equitable tolling is appropriate and whether appellate counsel acted unreasonably in failing to pursue petitioner's *Blakely* claim in further appellate proceedings.  Respondent is **DIRECTED** to provide supplemental briefing within thirty (30) days of the date of this order regarding petitioner's claim that her sentence violates *Blakely*.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting

the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge
